UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMY R GORMAN, | § | |
| | § | |
|     Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-729 |
| | § | |
| VERIZON WIRELESS TEXAS, LLC, *et al*, | § | |
| | § | |
|     Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court is the Motion for Summary Judgment (Doc. 20) filed by Verizon Wireless Texas, LLC ("Verizon"); Verizon Wireless Services, LLC ("VZW"); and GTE Mobilnet of South Texas Limited Partnership ("GTE") (collectively, "Defendants") against all claims made by Plaintiff Amy Gorman ("Gorman"). Having considered the parties' arguments, the facts in the record, and the applicable law, the Court concludes that the motion should be granted.

**I.    Background**

This is an action for gender discrimination and retaliation under the Texas Commission on Human Rights Act (TCHRA), Tex. Lab. Code § 21.001 et seq. Plaintiff Amy Gorman's Complaint (Doc. 1-1 Ex. C) arises out of her employment with Verizon, which began around July 2002. (Gorman Decl. ¶ 2, Doc. 25-1). In August 2007, Gorman received a promotion to the position of Government Sales Manager ("GSM") and began supervising a team of six Business Account Executives ("BAE"). (Gorman Decl. ¶ 3). As a GSM, Gorman's first-line supervisor was Darryl Williams ("Williams"), whose title was Associate Director ("AD") of Government Sales. (Gorman Dep. 122:10-125:18, 128:3-129:10, June 23, 2012, Doc. 20-2; Smith Decl. ¶ 8,

Doc. 20-12). The alleged events underlying her Complaint can be traced back to September 2008, when Jason Smith ("Smith") became the new Director of Business Sales and Gorman's second-line supervisor. (Gorman Decl. ¶ 4).

According to Gorman, Smith consistently treated her worse than her male colleagues. (Gorman Decl. ¶ 4). For example, she alleges that he excluded her from meetings, social events, networking functions, and dinners; excluded her from important business emails and other communications; and, in general, treated her "in a [more] derogatory fashion," including cursing and name-calling. (Gorman Decl. ¶¶ 4-5, 8). Gorman further alleges that, on or about September 22, 2009, Smith told her she "needed to 'strongly consider' taking a demotion to Major Account Manager" ("MAM"), and that she, fearing termination, "felt [she] had no choice and did as Mr. Smith asked." (Gorman Decl. ¶¶ 12-13). But before the job change took effect, Gorman was approached by Kitti Gaur ("Gaur") from the Human Resources ("HR") department, who asked Gorman about the change. (Gorman Decl. ¶ 17; Gaur Decl. ¶ 9, Doc. 20-11). Gorman explained that she had accepted the demotion only because of Smith's "discriminatory conduct." (Gorman Decl. ¶¶ 17-19). Gaur replied that no one could force her to accept the demotion and that Verizon would conduct an investigation into her claims of gender discrimination. (Gorman Decl. ¶ 20). As a result, the change never materialized and Gorman continued without interruption in her position as GSM. (Gorman Dep. 129:11-132:21; Gaur Decl. ¶ 9; Smith Decl. ¶ 15). Deeone McKeithan ("McKeithan"), Associate Director of Human Resources, conducted an investigation of Smith's performance as a supervisor, but did so in a manner that did not disclose Gorman as the source of any complaints, (McKeithan Decl. ¶ 10, Doc. 20-9), and, according to Smith, he was unaware that Gorman had made any accusations against him, (Smith Decl. ¶ 17). According to Gorman, however, Smith "increased his hostility toward [her] right after Verizon conducted

its investigation," including increasing her "isolation and exclusion from business events and communications." (Gorman Decl. ¶¶ 21-22).

Soon thereafter, in December 2009, Gorman applied for the newly created position of Business Support Supervisor ("BSS"). (Gorman Dep. 165:9-166:15, 169:6-19; Cocetti Dep. 9:2-19, Sep. 4, 2012, Doc. 20-7; Smith Decl. ¶¶ 19-20; McKeithan Decl. ¶ 13). According to Gorman, she did so in order to get out of "Smith's direct line of fire," believing that she would receive equal compensation as a BSS and could return to her GSM position after Smith was replaced as Director of Business Sales. (Gorman Decl. ¶ 37). After assuming her role as BSS, however, Gorman learned that her annual compensation would be almost $14,000 less than before. (Gorman Decl. ¶ 38). Sandra Cocetti ("Cocetti"), Manager of Business Support ("MBS"), became Gorman's new first-line supervisor, while Smith remained as her second-line supervisor. (Cocetti Dep. 9:2-19; Smith Decl. ¶ 18).

Meanwhile, in October 2009, one other significant event had occurred: a transaction with the Texas Department of Criminal Justice ("TDCJ"). (Gorman Decl. ¶ 23). The specific individuals involved with the transaction included BAE Robert Whittleman ("Whittleman"), BAE Chris Medlenka ("Medlenka"), AD Darryl Williams, and Gorman (collectively, the "TDCJ Team"). (Gorman Decl. ¶ 23; Smith Decl. ¶ 24). Gorman claims that although she was aware of the deal, she "was not an active participant in [it]." (Gorman Decl. ¶ 23). Regardless, the result of the transaction was the payment of commissions to Whittleman, Medlenka, Williams, and Gorman, (Doc. 25 at 11); a loss to Verizon of over $75,000, (Doc. 20 at 12); and an investigation by Verizon into the propriety of the deal, (Gorman Decl. ¶ 40).

At the request of Smith and Victor Fettes ("Fettes"), Associate Director of Finance, Cocetti investigated the transaction and reported her conclusion: that the TDCJ Team had

structured the deal to provide 200 unbilled lines of service, 200 free cell phones, and a $20,000 credit for use on preexisting lines of service, all for the purpose of awarding themselves unearned commissions. (Cocetti Decl. ¶ 21). Smith and Fettes reported Cocetti's findings to McKeithan, and they all, in turn, reported the findings to Kay Henze ("Henze"), Regional President. (McKeithan Decl. ¶¶ 20-22). Henze concluded that the TDCJ transaction violated the honesty and integrity provisions of Verizon's Code of Conduct and, therefore, that the employees involved should all be terminated immediately. (Henze Decl. ¶¶ 15-16, Doc. 20-15). Beverly Mullins ("Mullins"), Executive Director of Human Resources and Verizon's highest HR professional for the South Area, (Mullins Decl. ¶ 3, Doc. 20-16), concurred with Henze's conclusion, and, as a result, the employment of every member of the TDCJ Team, including Gorman, was terminated on July 7, 2010. (Gorman Dep. 31:15-34:1; Mullins Decl. ¶¶ 7-8).

On August 6, 2010, Gorman filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging gender discrimination and retaliation, and, on August 23, she received the EEOC's Notice of Right to Sue. (Gorman Decl. ¶ 54). On November 19, 2010, Gorman filed suit in the 129th Judicial District Court of Harris County, Texas, alleging gender discrimination and retaliation in violation of the TCHRA. (Doc. 1-1 Ex. C). Later, on December 7, 2010, Gorman received her Right to Sue letter from the Texas Workforce Commission ("TWC"). (Gorman Decl. ¶ 54). On March 2, 2011, Defendants removed the action to this Court. (Notice of Removal, Doc. 1).

## II.     Legal Standard

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The substantive law governing the claims determines the elements essential to the outcome of the case and thus determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the nonmovant bears the burden of proof at trial, the movant need only point to the absence of evidence supporting an essential element of the nonmovant's case; the movant does not have to support its motion with evidence negating that case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant succeeds, the nonmovant can defeat the motion for summary judgment only by identifying specific evidence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248–49.

### III. Discussion

In this case, the relevant substantive law is the TCHRA, and the framework for analysis of claims under that law is the same as that for claims under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999) ("[T]he law governing claims under the TCHRA and Title VII is identical."); *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633-34 (Tex. 2012) (interpreting the TCHRA in accordance with Title VII). Where, as here, a plaintiff relies on circumstantial evidence to prove claims for discrimination or retaliation under the TCHRA, the analysis follows the three-step *McDonnell Douglas* burden-shifting framework. *Garcia*, 372 S.W.3d at 637 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). First, the plaintiff must establish a prima facie case, the specific requirements of which vary according to the particulars of her claim. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). If successful, the plaintiff creates a rebuttable presumption of unlawful activity. *Id.* In the second step, the defendant has a burden of production, which it can meet only by "articulat[ing] a legitimate, nondiscriminatory [or nonretaliatory] reason" for its activity. *Id.* If the defendant meets its

burden, then, in the third step, the plaintiff "must show that the employer's putative legitimate, nondiscriminatory reason was not its real reason, but was merely a pretext for discrimination" or retaliation. *Id.*

### A.    *Gender Discrimination*

Before filing a TCHRA claim in federal court, an employee must first satisfy state administrative requirements, *Jones v. Grinnell Corp.*, 235 F.3d 972, 975 & n.3 (5th Cir. 2001), including filing a charge of discrimination "within 180 days after the alleged unlawful employment action," *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th Cir. 2004). Then, in order to establish a prima facie case of gender discrimination, a plaintiff must show that (i) she is a member of a protected class; (ii) she was qualified for her position; (iii) she suffered an adverse employment action; and (iv) others outside the protected class were treated more favorably. *Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 F. App'x 917, 921 (5th Cir. 2009). Defendants offer proof that, first, Gorman did not satisfy her administrative requirements because the two alleged employment actions occurred more than 180 days before her Charge of Discrimination,[1] and second, the actions were not "adverse": the demotion to MAM, because it never actually occurred, and the demotion to BSS, because Gorman voluntarily applied for and accepted the position. (Doc. 20 at 27, 33-34). Gorman does not respond with proof of her own; instead, she states that she "voluntarily withdraws her claims for gender discrimination and harassment, and is proceeding only on her claim for retaliation, and seeks to proceed only against Verizon Wireless Texas, LLC." (Doc. 25 at 1 n.1). Accordingly, the undisputed facts show that

---

[1] Defendants argue that Gorman also failed to satisfy her administrative requirements by filing suit before obtaining a TWC right-to-sue letter and, therefore, that all claims, including her retaliation claim, are barred. (Doc. 20 at 26). Though Defendants are correct regarding this administrative requirement, they are not correct with respect to the remedy in this case. Gorman obtained a TWC right-to-sue letter (Doc. 25-4 at 4) on December 7, 2010, and, by obtaining the letter after filing suit, she thereby cured her initial failure. *See Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1215 (5th Cir. 1982) (holding that "receipt of [a right-to-sue letter] prior to dismissal of … Title VII claims cure[s a] failure to initially satisfy the condition precedent").

Gorman failed to satisfy the conditions precedent to filing a discrimination claim and, even if she had, that she cannot establish a prima facie case of discrimination; therefore, summary judgment must be granted on this claim.[2]

### B.     *Retaliation*

In order to state a prima facie case of retaliation, a plaintiff must show that (i) she engaged in a protected activity; (ii) an adverse employment action occurred; and (iii) a causal link exists between the protected activity and the adverse employment action. *Hiner v. McHugh*, No. 12-51123, 2013 WL 4034421, at *6 (5th Cir. Aug. 9, 2013) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). Verizon does not dispute the first two prongs, but argues that Gorman cannot establish the third, causation.

Determining the existence of a causal link "is highly fact specific," *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994), and requires a calculation of all relevant factors, *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992). Examples of such factors include "(1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination." *Smith v. Xerox Corp.*, 371 F. App'x 514, 520 (5th Cir. 2010) (citing *Nowlin*, 33 F.3d at 508); *see also Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995) ("The timing of the adverse employment action can be a significant, although not necessarily determinative, factor."). Although an employer's unawareness of the protected activity is sufficient to break the causal link, awareness, standing alone, is hardly sufficient to establish such a link. *See Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected conduct at

---

[2] Although Gorman attempts to "voluntarily withdraw[ ]" her claims, under the current circumstances, she may only request their dismissal by court order. *See* Fed R. Civ. P. 41(a). Given the pending motions for summary judgment, it is more appropriate to treat her response as a representation of no opposition.

the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct."). Otherwise, simply engaging once in a protected activity would be enough to satisfy the causal link requirement for perpetuity. The existence of factors such as temporal proximity renders this an impossibility.

The two factors at issue are, first, Verizon's knowledge of Gorman's protected activity and, second, the temporal proximity between her activity and her termination. Regarding the first factor, there is a dispute whether Smith had knowledge, or at least suspicions, of Gorman's allegations of discrimination. Gorman relies on this to argue that, under the "cat's paw" theory of liability, "even if Jason Smith did not make the final decision, he influenced the decision such that Defendants are liable for the unlawful termination." (Doc. 25 at 28). Under this theory,

> [a] causal link can be established by evidence that the ultimate decision maker, with final authority to hire and fire subordinate employees, merely "rubber stamped" a recommendation to terminate made by an employee with knowledge of the complaint. The causal link, however, can be severed if there is evidence that the ultimate decision maker did not merely "rubber stamp" the recommendation of the employee with knowledge of the protected activity, but conducted an independent investigation into the circumstances surrounding the employee's termination.

*Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998) (citations omitted). An examination of the facts reveals nothing supporting Gorman's contention that the final decisionmakers were merely "rubber stamps." On the contrary, the record shows that the investigation of the TDCJ transaction was conducted by Cocetti, her findings were forwarded to Henze, and both Henze and Mullins reached independent conclusions that the TDCJ Team had violated the company's Code of Conduct.

Moreover, even if Gorman could establish that Smith was the de facto decisionmaker, that fact alone would not be enough to show causality for the purpose of establishing a prima facie case. That case depends on the second factor, temporal proximity, and here, there is no

dispute: the length of time between her protected activity and her termination was a full ten months. This, without more, is insufficient to establish a causal link. *See, e.g.*, *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) ("Close timing between an employee's protected activity and an adverse action against him *may* provide the 'causal connection' required to make out a *prima facie* case of retaliation." (emphasis added)); *see also Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001) (finding temporal proximity of two months to be sufficient); *Sherrod*, 132 F.3d at 1116 (same); *Jones v. Flagship Int'l*, 793 F.2d 714, 717 (5th Cir. 1986) (same).

> Among previous discrimination cases in [the Fifth Circuit] alleging retaliation …, the longest interval between filing and termination has been fourteen months. *Shirley,* 970 F.2d at 41. In *Shirley,* however, the employee's supervisor made disparaging references to her concerning her EEOC charge at least twice a week, and alleged performance problems appeared only after she filed the charge. *Id.* at 43. These incriminating facts were critical evidence tying the discharge to protected activity, evidence totally lacking in [this] case.

*Patton v. Schlumberger Tech. Corp.*, 95 F.3d 1148, at *3 (5th Cir. 1996). Although Gorman alleges vaguely that Smith's treatment of her became worse after her accusation of discrimination, there is nothing in the record to support this conclusion. None of the relevant facts in *Shirley* are present in this case, nor does Gorman cite any authority supporting the proposition that a temporal proximity of ten months is, by itself, sufficient. As the *Swanson* court elaborated, "the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case…. [P]rotection against retaliation does not permit EEO complainants to disregard work rules or job requirements." 110 F.3d at 1188 n.3. The U.S. Supreme Court has further clarified that "(1) to be persuasive evidence, temporal proximity *must* be very close, and importantly (2) temporal proximity alone, when very close, *can* in some instances establish a *prima facie case* of retaliation." *Strong v.*

*Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (emphases added) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Gorman, however, completely ignores the issue of temporal proximity; indeed, she even goes so far as to misstate the law as merely requiring "evidence of *either* a sufficiently close proximity in time *or* evidence showing that the decision maker had knowledge of the protected activity." (Doc. 25 at 26) (emphases added).

Finally, even if Gorman could state a prima facie case, she is unable to create any doubts about Verizon's legitimate, nonretaliatory reason for her termination. As Henze stated in her declaration:

> I told Fettes, Smith and McKeithan that … anyone involved in the TDCJ transaction should be terminated since the structuring of the transaction violated the fundamental principles of honesty and integrity and conducting business with the upmost ethics mandated by the Code. I believe Whittleman's account of the reasons for the transaction (to obtain unapproved seed stock and unearned commissions) was credible. I further believe any lack of knowledge or contradictory explanations from Gorman, Medlenka or Williams was not credible. I recall stating in the meeting, "if it walks like a duck, talks like a duck, then it is a duck!" Given the magnitude of the order (200 lines), if a manager did not know the details of the deal, he or she should have known. In this case, Whittleman … reach over 400% of his quota along with a large commission, and Gorman herself received a substantial commission, and so her incompetence for not knowing alone would warrant termination.

(Henze Decl. ¶ 15). And, as Mullins stated in her declaration:

> I determined that in October 2010, Gorman, Whittleman, Medlenka, and Williams structured a transaction with the TDCJ where VZW would provide the TDCJ with two hundred free devices, a $20,000 billing credit, and two hundred lines of service; however, the service would be suspended for six months, which coincides with the chargeback period on sales commissions…. At the conclusion of six months, TDCJ could cancel the lines without charge. TDCJ did not want the lines of services and did not intend to activate the lines at any time. Gorman and the others included the six month period to avoid commission chargebacks. Structuring the transaction in this way was misleading and violated the Code of Conduct's requirement that employees conduct business with honesty and integrity. Gorman was aware, or certainly should have been aware given the involvement of her subordinate, of the circumstances surrounding this transaction and failed to report the matter as required by the Code of Conduct.

(Mullins Decl. ¶ 7).

Although the federal courts offer a proper forum for adjudicating legitimate claims of discrimination and retaliation, they do not offer one for second-guessing legitimate business decisions based on a company's code of conduct. While Gorman is unhappy with Verizon's decision, she is unable to adduce evidence showing that her termination was the result of anything other than Verizon's judgment that she failed in her duties as a supervisor and employee. Accordingly, there is no dispute of material fact, and Gorman's claims cannot survive summary judgment.

## IV.   Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment (Doc. 20) is **GRANTED** and Plaintiff's case is **DISMISSED**.

SIGNED at Houston, Texas, this 24th day of August, 2013.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE